# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| TRACY CAMPBELL, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. CIV-21-181-SPS |
| KILOLO KIJAKAZI,<br>Acting Commissioner of the Social<br>Security Administration,[1] | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Tracy Campbell requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-eight years old at the time of the administrative hearing (Tr. 50-54). She completed two years of college and the ALJ made no finding as to past relevant work (Tr. 42, 252). The claimant alleges that she has been unable to work since September 8, 2018, due to kidney disease, congestive heart failure (CHF), osteoarthritis, sleep apnea, and neuropathy (Tr. 251).

## Procedural History

On May 22, 2019, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ James Stewart conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 7, 2020 (Tr. 30-44). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step four, he found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she could only

occasionally climb ramps/stairs, crawl, balance, kneel, stoop, or crouch; frequently finger and handle bilaterally; and never climb ladders/ropes/scaffolds. Additionally, he found she could not drive, and that she must avoid hazards including unprotected heights and moving machinery, as well as concentrated exposure to pulmonary irritants such as dusts, odors, or gases (Tr. 34). The ALJ then proceeded to step five and determined that the claimant was not disabled because there was work that she could perform in the national economy, *e. g.*, circuit board assembler and document preparer (Tr. 42-44).

## Review

The claimant contends[3] that the ALJ: (i) failed to properly assess her RFC by failing to include relevant limitations and to properly evaluate the consistency of her statements in light of her symptoms, which (ii) resulted in errors at step five as to the jobs identified. The Court agrees with the claimant's first assertion, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of congestive heart failure, osteoarthritis, neuropathy, restrictive lung disease, sleep apnea, obesity, solitary kidney, and kidney disease (Tr. 33). The relevant medical evidence reflects that the claimant presented to the emergency room for numerous issues during the applicable time. On September 6, 2018 (two days prior to the alleged onset date), the claimant presented to the ER with complaints of increased lower extremity edema; she was medically cleared

---

[3] The Plaintiff has failed to comply with this Court's Loc. Civ. R. 7.1(c) regarding format and length of brief. The Court will proceed with the arguments raised in this case, but cautions counsel that, in the future, consideration may only be given to that portion of the brief in compliance with this Court's Local Rules.

and discharged the same day (Tr. 491-493). On October 16, 2018, she presented with complaints of chest pain, edema, and difficulty breathing, but she did have normal range of motion (Tr. 436-437). At that time, she was assessed with questionable congestive heart failure, as well as chronic kidney disease (due in part to congenital syndrome of one kidney), hypertension, and morbid obesity (Tr. 456). On January 5, 2019, the claimant presented with shortness of breath and eight pounds of weight gain with peripheral edema (Tr. 610). Her discharge diagnoses the following day included acute on chronic diastolic CHF exacerbation, chronic kidney disease, hypertension, and GERD (Tr. 609-610). The following month, on February 5, 2019, the claimant complained of an eight-pound weight gain, peripheral edema, increased shortness of breath, weakness, and fatigue (Tr. 1082). She was stabilized and sent home (Tr. 1082). She presented with shortness of breath on March 5, 2019 and was diagnosed with bronchitis (Tr. 522-523). On July 14, 2019, the claimant had no signs of acute CHF, but was mildly hypertensive and had peripheral edema (Tr. 630). The claimant returned to the hospital on July 17, 2019, with increased pedal edema and shortness of breath (Tr. 636-637). On August 5, 2019, the claimant returned with complaints of pedal edema but no shortness of breath, and hospital notes reflect it was considered "fairly chronic" at that point (Tr. 651). She again presented with shortness of breath and peripheral edema on August 14, 2019 (Tr. 668-671).

A complete retroperitoneal (renal) ultrasound revealed the claimant had a right pelvic kidney, and no left kidney (Tr. 482). A CT scan of the thorax conducted on January 16, 2019 revealed a right lower lobe noncalcified pulmonary nodule, and follow up within a year was recommended to assess stability (Tr. 478).

On September 10, 2019, the claimant presented to the hospital following a fall, and was assessed with a sprain of the left knee and pedal edema (Tr. 687-688). She received an x-ray of the knee on September 24, 2019, which showed mild osteoarthritic changes, primarily in the medial joint compartment, but not fracture or dislocation (Tr. 767). In late 2019, the claimant underwent a number of sessions of physical therapy but made no significant improvement during that time (Tr. 830). Discharge notes indicate that she continued to have pain and weakness in her bilateral lower extremities, but that she requested to discharge and only continue with the pain clinic for injections (Tr. 829-830). The assessment upon discharge was that the claimant was stable, but had balance deficits, decreased knowledge of her condition, endurance deficits, pain limiting her function, and both range of motion and strength deficits (Tr. 829). An MRI of the left knee conducted on June 10, 2020 revealed a Grade I MCL sprain, as well as tricompartmental osteoarthritis, most significant in the patellofemoral compartment with grade IV chondromalacia of the lateral patellar facet and subchondral marrow edema along with small joint effusion (Tr. 881).

In January 2020, the claimant was hospitalized for nearly two weeks, during which time she underwent a heart catheter and gallbladder removal (Tr. 824). On July 13, 2020, the claimant presented to the ER and was assessed with a lumbar strain after pain for over a week, combined with her chronic left knee problems (Tr. 818-820).

In addition to ER visits, the claimant frequently complained of edema at appointments with treating physicians (Tr. 815). The claimant was positive for joint pain and swelling at a routine appointment on September 23, 2018 (Tr. 964). Nephrology

treatment notes from October 2018 reflect the claimant was positive for joint pain, cramps, and swelling (Tr. 915). However, she had no joint pain or decreased range of motion at an appointment on November 26, 2019 to address her CHF diagnosis (Tr. 1134). On January 13, 2020, the claimant was noted to have newly-diminished ejection fraction (Tr. 1161). She was assessed with joint pain, cramps, and swelling on February 17, 2020 (Tr. 1016). She was sent to the Northeast Oklahoma Heart Center on February 10, 2020, and assessed with cardiomyopathy, at which time she was noted to have shortness of breath (Tr. 1215-1216). Both an echocardiogram and pulmonary function test were abnormal, showing moderate to severe interstitial disease and mild diffusion (Tr. 1221, 1243, 1390). The claimant again reported continued shortness of breath and pedal edema on April 1 and 8, 2020 (Tr. 1243, 1266-1267). An April 22, 2020 treatment note reflects the claimant continued to have leg swelling, and that "[s]he does not appear to be that mobile at home" (Tr. 1316). She was still swollen on May 5, 2020, at which time she was assessed with diastolic CHF (Tr. 1351-1352). On August 6, 2020, the claimant was treated at Tahlequah Medical Group for follow up of her pulmonary nodule and dyspnea (Tr. 897). Treatment notes indicate that the claimant had an unstable gait due to degenerative joint disease, and that she limped. The claimant attempted a six-minute walk but lasted only ten to fifteen seconds (Tr. 897, 1440-1441). She was noted to have severe degenerative joint disease primarily involving her knee joints (Tr. 1440). She was assessed with dyspnea on exertion, restrictive lung disease secondary to obesity, physical deconditioning, pulmonary nodule, sleep apnea, and morbid obesity (Tr. 898, 1441). On September 17, 2020, treatment notes reflect that the claimant reported continued shortness of breath and edema (Tr. 1380). On

September 19, 2020, the claimant noted "fluid overload" as well as difficulty with mobility (Tr. 815).

The record reflects that the claimant had a BMI over 50, with weight ranging from 286 to 321 pounds (Tr. 439, 984, 1016). A sleep study conducted on September 10, 2020 revealed that the claimant had mild obstructive sleep apnea and comorbid sleep-related hypoventilation (Tr. 1123).

The record contained no consultative exams of the claimant. State reviewing physicians determined initially and upon review that the claimant could perform light work with no additional limitations (Tr. 128-129, 150-151). The reconsideration was completed on December 3, 2019 (Tr. 151).

At the administrative hearing, the claimant testified that she had to begin working fifteen to twenty hours per week because she lived alone and had no outside financial support (Tr. 58-59). She further testified that she experiences daily problems with swelling, mostly in her feet and legs, despite taking medication for it, and that it is particularly around her left knee following a fall (Tr. 60-62). She estimated she could lift about a gallon of milk, stand five minutes before needing to sit, and that she still has swelling in her legs when she is seated (Tr. 63). As to daily activities, she stated that she does not have "issues," but that tasks such was washing dishes take her a long time because she takes frequent breaks (Tr. 64).

The claimant submitted additional records to the Appeals Council. They indicate, *inter alia*, that the claimant continued to complain of left knee pain following injections that provided no pain relief (Tr. 20-21). Her range of motion was painful and guarded, and

she ambulated antalgically (Tr. 21). She was prescribed a walker, and weight loss was also recommended (Tr. 21). Due to her comorbidities, particularly her morbid obesity, she was not considered a good candidate for surgery (Tr. 21).

In his written opinion at step four, the ALJ summarized the claimant's hearing testimony as well as much of the evidence in the record beginning in August 2018 (Tr. 42). In particular, the ALJ noted the claimant's discharge from physical therapy, including her left knee flexion improvement, as well as continued pain and weakness in the bilateral lower extremities, but made no mention of her deficits of balance, endurance, strength, and range of motion (Tr. 39, 829). He did note the pulmonology exam where the claimant lasted only ten to fifteen seconds of the six-minute walk and that she had exertional dyspnea, but pointed out that her saturation was 97% at rest (Tr. 40-41). The ALJ found the claimant's statements not consistent with the evidence because: (i) she was able to live alone and meet her needs without assistance, (ii) she worked fifteen to twenty hours per week, (iii) a November 2018 treatment note showed a normal range of motion, (iv) an August 2020 record showed only trace edema (Tr. 1044), (v) her kidney function was stable, (vi) her ejection fraction had stabilized, and (vii) her oxygen saturation was 98% despite continued complaints of shortness of breath (Tr. 35). The ALJ then stated that the claimant could, *inter alia*, occasionally climb stairs/ramps, crawl, balance, kneel, stoop, or crouch because her range of motion and strength testing was "generally within normal limits," and that he restricted the claimant from pulmonary irritants due to her restrictive lung disease, and to only frequent handling and fingering due to neuropathy, but dismissed her "pain problems" because they were due to her morbid obesity (Tr. 41-42). He then

found the state reviewing physician opinions not persuasive in light of the longitudinal evidence and because they did not examine the claimant (Tr. 42). He ultimately concluded that there was work the claimant could perform at step five and she was therefore not disabled (Tr. 42-44).

The claimant argues that the ALJ improperly evaluated her RFC and the Court agrees. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). In this case, although the ALJ *discussed* the evidence related to the claimant's physical impairments throughout the evaluation, he focused only on records that supported his conclusions while ignoring consistent records from treating, consultative, *and* reviewing physicians which supported additional limitations, particularly regarding her balance, joint pain and swelling, and range of motion. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]. *See also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing

the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted]. For example, the ALJ recited her numerous hospitalizations for swelling, pain, and shortness of breath, but found she had a normal range of motion despite her BMI. However, both her discharge notes from physical therapy and treatment notes in 2020 made repeated mention of the claimant's range of motion deficits and gait/walking problems. Additionally, the ALJ failed to cite to any evidence in the record to support his RFC findings that her shortness of breath was accounted for only by avoiding pulmonary irritants and not also in relation to exertional difficulties. The ALJ has thus failed to point to medical evidence demonstrating how he accounted for her impairments in the RFC, *or* how he accounted for the combined effects of her impairments. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

Finally, the ALJ entirely failed to mention, much less consider the "cumulative effect of claimant's impairments," at step four. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at

step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. This is particularly important here, where the claimant's morbid obesity appeared to have additional limiting effects on her impairments including osteoarthritis, sleep apnea, and lung disease. Indeed, the ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. Here, the ALJ ignored any evidence in the record as to the claimant's obesity, much less *how* the claimant's obesity and co-existing impairments actually affected the RFC. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC.") (*citing* Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *1, *5-*6, *7). *Cf. DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments'

– a process forbidden by SSR 02-1p.") (*citing* Soc. Sec. R. 02-1p, 2002 WL 34686281, at *6).

As a final note with the regard to the RFC assessment here, the Court finds that reversal is sufficient for the reasons listed above, but likewise notes that a consultative examination would have been helpful in this case despite recognizing that an ALJ has broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment.") (*citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990)). *See also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-741 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.") (quotations omitted). Although an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record, *see Hawkins*, 113 F.3d at 1168, the Court points out that such an examination would have been helpful in this case to clarify the extent of the claimant's physical impairments along with more specific effects on her functional limitations and mobility, particularly when all her impairments were considered in combination.

Next, the Court turns to the ALJ's assessment of the claimant's subjective complaints. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[4] Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[5] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any

---

[4] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[5] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

The claimant contends, *inter alia*, that the ALJ failed to properly consider the factors set forth above when evaluating her subjective statements. The Court agrees. Here, the ALJ examined the evidence of record and outlined the appropriate process for evaluating the claimant's pain and other symptoms in his decision, and even provided several reasons for his findings. But importantly, the reasons given by the ALJ for finding the claimant's subjective complaints were not consistent with the medical and other evidence and are not entirely supported by the record. For example, the ALJ cited a November 2018 record (and not her physical therapy record or repeated 2020 treatment notes) to conclude she had a normal range of motion and normal strength, and only cited one August 2020 record to conclude she only had trace edema without recognizing the repeated hospitalizations from 2018 through the close of the record which reflected chronic edema. And while the ALJ recited much of the evidence, he failed to address where it supported the claimant's

testimony. A direct examination of such "perceived" inconsistencies reveals that the ALJ only cited evidence favorable to his foregone conclusions and ignored evidence that did not support his conclusions. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") (*citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). The Court further finds that the ALJ's error with regard to the claimant's subjective statements likewise had a direct effect on his assessment of the claimant's ultimate RFC (along with the errors described above).

Because the ALJ failed to properly analyze the evidence of record, the Commissioner's decision is reversed and the case remanded to the ALJ for further analysis. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**